OPINION OF THE COURT
Jan H. Plum adore, J.
By order to show cause dated May 30, 1981, the defendant has moved, through his attorney, for an order “dismissing the indictment herein on the grounds that the prosecution of the defendant on the charge of Criminal Usury in the Second Degree (PL 190.40) is violative of his Constitutional Rights *** in that the defendant by being prosecuted on this indictment is being denied equal protection of the laws * * * and is being deprived of liberty without due process of law” (CPL 210.20, subd 1, par [h]).
The defendant is accused of making a $3,500 loan to one Floyd Bilbrey at an interest rate of approximately 208% per annum. The thrust of his “equal protection” argument is that, with the passage in 1980 of section 5-501 (subd 6, par b) of the General Obligations Law (which allows for an interest rate in excess of 25% on loans greater than $2.5 million), section 190.40 of the Penal Law now arbitrarily and capriciously discriminates against him since he “cannot make a loan for an amount in excess of $2,500,000.00” *871 and that, in light of present economic conditions, there is no “correlation between those laws (PL 190.40; Gen. Oblig. Law 5-501 (6) (b)) and the protection of the public good.” With respect to “due process”, the defendant argues that, with the increase in the interest rates since section 190.40 of the Penal Law was enacted in 1967, “any possible connection between the 1967 Criminal Usury Law and the promotion of the public welfare has become obsolete” and “the twenty-five (25%) percent per annum interest ceiling is now arbitrary and capricious”.
The defendant’s motion is in all respects denied.
First, there is a “strong presumption” that a statute duly enacted by the Legislature is constitutional. (People v Pagnotta, 25 NY2d 333, 337; see, also, Matter of Quinton A., 49 NY2d 328, 336; People v Davis, 43 NY2d 17, 30; Montgomery v Daniels, 38 NY2d 41, 54; People v Broadie, 37 NY2d 100, 117; Matter of Taylor v Sise, 33 NY2d 357, 364; Matter of Van Berkel v Power, 16 NY2d 37, 40). In order to declare a statute unconstitutional, the invalidity of the law “must be demonstrated beyond a reasonable doubt.” (Emphasis supplied; People v Pagnotta, supra, at p 337; Matter of Van Berkel v Powers, supra, at p 40.) Furthermore, a statute should not ordinarily be set aside as unconstitutional by a court of original jurisdiction “unless such conclusion is inescapable”. (People v Smith, 88 Misc 2d 590, 597, citing People v Tabb, 80 Misc 2d 431; People v Estrada, 80 Misc 2d 608; People v Webb, 78 Misc 2d 253; see, also, People v Riley, NCC, Aug. 12, 1974, Baker, J., at p 3.) Finally, the strong presumption of constitutionality includes “a very strong presumption” that the Legislature has investigated and found the existence of a situation indicating “ ‘the need for or desirability of the legislation’”. (Montgomery v Daniels, supra, at p 54 and cases cited therein; see, also, Matter of Quinton A., supra, at p 336.) Thus, the showing of unconstitutionality “beyond a reasonable doubt” may not be aided by the court substituting its own judgment for that of the Legislature “as to the wisdom and expediency of the legislation.” (People v Davis, supra, at p 30.) Given all of that, it is this court’s conclusion that the defendant has failed to meet his burden of demonstrating the unconstitutionality of section 190.40 of the *872 Penal Law beyond a reasonable doubt. The strong presumption of validity intact, the defendant’s motion is denied.
Assuming arguendo the presumption is inappropriate for present purposes, the defendant’s arguments still fail on the merits.
With respect to the “equal protection” argument, the Court of Appeals has recently restated the tests to be applied by the courts of this State in evaluating a claim of denial of equal protection of the laws. In People v Whidden (51 NY2d 457, 460 [Wachtler, J.]) the court stated:
“In evaluating whether a statute violates the equal protection clause a court normally applies a ‘rational basis’ test to determine whether the varied treatment of separate classifications of citizens ‘rests on grounds wholly irrelevant to the achievement of the State’s objective’ (McGowan v Maryland, 366 US 420, 425). Where a statute’s application differentiates on the basis of race, alienage or nationality, however, the classification is deemed suspect and a strict scrutiny test must be applied to determine whether the challenged law is ‘necessary to promote a compelling governmental interest’ (Shapiro v Thompson, 394 US 618, 634).
“Between those two tests, a third has developed to evaluate a constitutional challenge to a gender-based statute which ‘must serve important governmental objectives and must be substantially related to achievement of those objectives’ (Craig v Boren, 429 US 190, 197; see Califano v Webster, 430 US 313, 316-317).”
The first test, the “rational basis” test, is clearly the focal point of this court’s inquiry here.
The stated purpose for the Legislature’s enactment of section 190.40 of the Penal Law (and General Obligations Law, § 5-501) was to tighten the laws against “loansharking” and to provide law enforcement with an effective weapon against “organized or systematic loansharking.” (Governor’s Memorandum, McKinney’s 1965 Session Laws of NY, p 2101; Hechtman, Practice Commentaries McKinney’s Cons Laws of NY, Penal Law, § 190.40, p 377; Hammelburger v Foursome Inn, 76 AD2d 646, 649-650; Reis *873 man v Hartmann & Son, 51 Misc 2d 393, 395; see, also, Schylander v Tsaruchas, 96 Misc 2d 934, 935.) As the Court of Appeals stated it, the “purpose of usury laws, from time immemorial, has been to protect desperately poor people from the consequences of their own desperation.” (Schneider v Phelps, 41 NY2d 238, 243; see, also, Universal Credit Co. v Lowell, 166 Misc 15.) The legislation was never intended to affect the conduct of legitimate money lending businesses. (Memorandum of State Executive Dept, McKinney’s 1980 Session Laws of NY, p 1766; cf. Flushing Nat. Bank v Pinetop Bldg. Corp., 54 AD2d 555, and the cases cited therein.)
The purpose for the Legislature’s enactment in 1980 of a new paragraph b to be added to subdivision 6 of section 5-501 of the General Obligations Law, was the maintenance of New York’s position as a financial center, and the preservation and expansion of the finance industry in the State in view of the “[unprecedented credit conditions in this country, resulting in part from actions taken by the Federal Government”. (Memorandum of State Executive Dept, McKinney’s 1980 Session Laws of NY, p 1766.) The State’s action was designed to keep old and to attract new financial business to the State, thereby producing jobs, income, and tax revenue.
Clearly, the State had two legitimate objectives in enacting the foregoing legislation — on the one hand, to protect the poor and desperate by giving law enforcement authorities a weapon with which to combat the “loanshark”, and, on the other, to preserve and expand the State’s legitimate financial industry thereby producing jobs and revenue. This court cannot say that to treat this defendant differently from a large corporate lending institution (which has substantial assets, and which deals with its clients at arm’s length and with all the legal trappings) “is wholly irrelevant to achievement of [those] objectives.” There being valid State objectives and a “rational basis” for distinguishing between the two classes of lenders in order to accomplish those objectives, the defendant’s constitutional attack based on equal protection is rejected.
The defendant also attacks section 190.40 of the Penal Law as unconstitutional on the ground that it deprives him *874 of liberty without due process of law, to wit: in light of present economic conditions, the law does not promote the public good, and the law’s 25% per year interest ceiling is arbitrary and capricious.
The test to be applied by the court here was set forth by the Court of Appeals in Montgomery v Daniels (38 NY2d 41, 54, supra [Jones, J.]): “[WJhere a statute is challenged on nonprocedural grounds as violative of due process of law we have consistently asked the question whether there is ‘“‘some fair, just and reasonable connection’ between it and the promotion of the health, comfort, safety and welfare of society” ’. (Nettleton Co. v Diamond, 27 NY2d 182, 193, app dsmd sub nom. Reptile Prods. Assn. v Diamond, 401 US 969; People v Pagnotta, 25 NY2d 333, 337; People v Bunis, 9 NY2d 1, 4; Defiance Milk Prods. Co. v Du Mond, 309 NY 537, 541.)”
In applying this test, this court finds itself in agreement with the Honorable Harold Hyman and his reasoning in People v Fernandez (93 Misc 2d 127). Justice Hyman states (supra, pp 132-134):
“[I]t is the opinion of this court that the defendant’s challenge of this statute on nonprocedural grounds, that said statute violates due process of law, must be answered contrary to said contention for this court finds, without equivocation, that there is a fair, just and reasonable connection between the statute and its proscription and the promotion of the health, comfort, safety and welfare of society. * * *
“Due process of law has been held not to mean the very act of legislation effecting or authorizing a deprivation of life, liberty or property (People ex rel. Isaacs v Moran, 206 NY 670), but it is a concept of what is fundamentally just, fair and right (People v Colozzo, 54 Misc 2d 687, affd 32 AD2d 927). It does not follow that equal protection or due process has been denied merely because it may create a so-called ‘hardship’ upon a person (College Barn v State of N. Y., 60 Misc 2d 715, affd 25 NY2d 657). As was aptly stated by Mr. Justice Frankfurter in Rochin v California (342 US 165, 173): ‘Due process of law *** precludes defining, and thereby confining, these standards of conduct *875 more precisely than to say that convictions cannot be brought about by methods that offend “a sense of justice.” ’
“It is the opinion of this court that no fundamental ‘sense of justice’ has been nor will be denied these defendants by subjecting them to prosecution on this indictment. Merely subjecting defendants to a possible hard result based upon the legislation involved does not constitute any violation or deprivation of any of their fundamental, statutory or constitutional rights. The law is not unreasonable nor is it arbitrary. It reasonably relates and applies to an actual, manifest, fearsomely violent evil. The legislation wholesomely tests out as having a salutary, permissible legislative and State objective (Montgomery v Daniels, 38 NY2d 41, supra).”
Based upon the foregoing, the defendant’s motion is in all respects denied.